# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **ROSE GOFF,** individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff*, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| **POLICYSCOUT, LLC,** a Utah company and **ENFUEGO HOLDINGS, LLC,** a Utah company, | |
| *Defendants.* | |

## CLASS ACTION COMPLAINT

Plaintiff Rose Goff ("Plaintiff Goff" or "Goff") brings this Class Action Complaint and Demand for Jury Trial against Defendant PolicyScout, LLC ("Defendant PolicyScout") and Defendant Enfuego Holdings, LLC d/b/a Cege Media ("Defendant Cege" or "Cege Media") to stop the Defendants from violating the Telephone Consumer Protection Act by making pre-recorded telemarketing calls and text messages to cellular telephone numbers *without consent*. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff Goff, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Rose Goff is a resident of Kenosha, Wisconsin.

2. Defendant PolicyScout is a Delaware registered company with its principal office located at 6415 S 3000 East, Suite 210, Holladay, Utah 84121. Defendant PolicyScout conducts business throughout this District, Wisconsin, and the U.S.

3. Defendant Enfuego Holdings, LLC d/b/a Cege Media is a Utah registered company with its principal office located at 6415 S 3000 East, Suite 210, Holladay, Utah 84121. Defendant Cege conducts business throughout this District, Wisconsin, and the U.S.

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

5. This Court has personal jurisdiction over the Defendant and venue is appropriate because the Defendant conducts business in this District and the wrongful conduct giving rise to this case was directed by the Defendant to and received by the Plaintiff in this District.

## INTRODUCTION

6. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful robocalling technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

2

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

11. According to online robocall tracking service "YouMail," 4.4 billion robocalls were placed in June 2021 alone, at a rate of 148 million calls per day. www.robocallindex.com (last visited July 6, 2021). There has been a considerable rise in the number of calls from the daily average of 128.7 million calls per day over May 2021.

12. The FCC also has received an increasing number of complaints about unwanted calls. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

13. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

14. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

15. Defendant Enfuego Holdings operates using various aliases including Cege Media. Defendant Cege is a lead generator for the insurance industry.[3]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/Cege-media/

3

16. Approximately in 2019, Defendant Cege launched PolicyScout as a new brand in the insurance lead generation market:



Dane Dickerson is a remote based SEO Manager looking for a new remote job:

- Has 7 years of experience in SEO
- Has been 2 years working remotely
- Specialized in Technical SEO, Front End Development, Cross-Channel Strategy, Reporting Systems
- Find in LinkedIn
- Get in touch via email

**1. Can you please share your experience highlights and achievements as an SEO professional?**

- I launched a new insurance brand with CEGE called PolicyScout, directing content creation, brand strategy, and technical implementation with the team. This site launched during open enrollment and was (as of 1 month ago) acquiring dedicated carrier relationships for first party SEO leads.[4]

17. Defendant Cege is responsible for creating, controlling and running the operations of PolicyScout through its own employees.

18. Both PolicyScout and Cege Media are registered at the exact same address, at 6415 S 3000 East, Suite 210, Holladay, Utah 84121.

19. Defendant PolicyScout also specializes in customer acquisition for the insurance industry.[5]

20. Defendant Cege owns the "Policy Scout" trademark.[6]

21. Defendant Cege manages PolicyScout's Facebook page[7] and the website www.policyscout.com[8].

---

[4] https://remoters.net/dane-dickerson-remote-based-seo-manager-w-7-years-of-experience/
[5] https://www.facebook.com/policyscout/
[6] https://trademarks.justia.com/884/16/policy-88416067.html
[7] https://www.facebook.com/policyscout/
[8] https://policyscout.com/medicare/research-for-me/

4



22. When a consumer requests an insurance quote through policyscout.com, the website consent language states that the consumer will be contacted by an agent or marketing partner of Cege. No direct mention is made of PolicyScout itself:

> By clicking the button and submitting this form, I agree that I am 18+ years old and agree to the Privacy Policy and Terms & Conditions. By clicking the button and submitting this form, I provide my signature giving express consent to receive marketing communications via automated telephone dialing systems, artificial or pre-recorded voices, emails, live phone calls, pre-recorded calls, postal mail, text messages via SMS or MMS and other forms of communication regarding offers Medicare Supplement, Medicare Advantage, Part D, or other products from Cege Media and/or one or more of it's marketing partners and agents to the number(s) and/or email I provided, including a mobile phone, even if I am on a state or federal Do Not Call and/or Do Not Email registry. The list of companies participating are subject to change. I understand my wireless carrier may impose charges for calls or texts. I understand that my consent to receive communications is not a condition of purchase and I may revoke my consent at any time. To receive quotes without providing consent, please call at 1-833-259-7339. [9]

23. Defendant PolicyScout hires sales agents to place outbound sales calls. For instance, a post from Defendant PolicyScout's Facebook page advertising the role of 'Qualifying

---

[9] https://policyscout.com/hands-on-help/1/

Sales Specialist' states that the agents will "make outbound calls" using a "computer-automated system. (no manual dialing involved)"[10]:



24. Cege Media is directly responsible for controlling and running the operations of PolicyScout through its own employees. Multiple employees of Cege Media's work profiles show that they were also simultaneously working for PolicyScout under the same titles they held at Cege Media, and were responsible running and controlling the operations of PolicyScout. For instance:

- J.R. Farr – COO at Cege and PolicyScout[11]:

---

[10] https://www.facebook.com/policyscout/
[11] https://www.linkedin.com/in/jrfarr/





- Paul Matsuno, Vice President Operations at Cege Media and PolicyScout[12]:





- Dane Dickerson, SEO Manager at Cege Media was "responsible for the SEO direction" of the website PolicyScout.com[13] and other marketing campaigns:

---

[12] https://www.linkedin.com/in/paul-matsuno-0914a885/
[13] https://www.linkedin.com/in/danecd/

7




**Dane Dickerson**
Director of Marketing at EquityNet | Marketing Strategy and Execution Professional

**SEO Manager**
Cege Media · Full-time
May 2019 – Mar 2020 · 11 mos
SLC, UT

At CEGE, I was responsible for the SEO direction of our flagship site, PolicyScout.com. I commissioned writers, designed the site linking strategy, did off-site work for linkbuilding, and made executive decisions on site features and functionality.

I also built the company reporting engine to track revenue by channel and campaign, moved company databases into Google Cloud Platform, and launched an email program that now generates ~$30,000 in profit per month.

25. Defendant Cege exercising control over the operations of PolicyScout, causes PolicyScout to place pre-recorded outbound calls to consumers without receiving any written consent from them before placing such calls just as they called Plaintiff Goff, including to consumers whose number are listed on the National Do Not Call Registry, in flagrant violation of the Telephone Consumer Protection Act.

26. Defendant PolicyScout was formed and is operated to attempt to limit the liability of Defendant Cege for TCPA violations.

27. Many consumers have posted complaints about receiving pre-recorded calls from Defendant PolicyScout similar to the unsolicited call received by Plaintiff Goff.

28. For instance, there are several complaints on "Youmail" with the pre-recorded voice messages that consumers received from Defendant Policy Scout.[14] The second call recording on this webpage is identical to the pre-recorded voicemail received by Plaintiff Goff.

---

[14] https://directory.youmail.com/directory/phone/8889012788

8



29. Multiple other consumers have posted complaints online about receiving unwanted pre-recorded telemarketing calls from Defendant PolicyScout, including the following:

- "Policy scout calling me about life insurance. Prerecorded too! I'm on the do not call list but I guess they don't care."[15]

- "Calls several times per week! Very annoying!"[16]

- "They keep calling my work number."[17]

---

[15] https://findwhocallsyou.com/7048000240?CallerInfo#Done
[16] *Id.*
[17] https://whocallsme.com/Phone-Number.aspx/7048000240

9

- "I just got a voicemail, no sign of having called in my call log, about life insurance quotes, due to me enquiring (which I didn't do) from a policy scout Said to call back at 888-901-2788. Yeah, a scam!"[18]
- "Lmfao same!! My husband had an actual voicemail from this number. 2nd time they called both times it was calls from a life insurance company.... here's the transcript of the VM he received. " on your life insurance quote from Policy scout I have your file open and it looks as if you have inquired a few days ago so give me a call back at 1-800-787-2687 I want to set up a quick call to make sure you get the best rates as possible I'm looking at your file and there are a lot of options we can discuss.""[19]

30. In response to these calls, Plaintiff Goff files this lawsuit seeking injunctive relief requiring the Defendants to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF GOFF'S ALLEGATIONS

31. Plaintiff Goff registered her cell phone number on the DNC on March 9, 2008.

32. Plaintiff Goff uses her cell phone number for personal use only. It is not associated with a business.

33. On June 22, 2021, Plaintiff Goff received a pre-recorded voicemail on her cell phone from phone number 917-920-7396 from the Defendant PolicyScout soliciting life insurance quotes.

34. The voicemail was pre-recorded in a female voice which said:

---

[18] https://800notes.com/Phone.aspx/1-900-999-9999/20
[19] https://800notes.com/Phone.aspx/1-900-999-9999/19

10

"Hi there, I'm just following up on your life insurance quote from PolicyScout. I have your file open and it looks like you inquired a while ago, so I just wanted to follow up. Give me a call back as soon as you can at 1-888-901-2788. I just want to set up a quick call to make sure you get the best rates as I'm looking at your file there's a lot of different options we can go over, and we can make it easy to understand what the best option is for you. So anyway, just give me a call back as soon as you can. I have your file open for life insurance quotes and again I'm calling from PolicyScout and our number is 1-888-901-2788. I look forward to hearing from you. Bye-bye!"

35. As mentioned in paragraph 28 above, other consumers have also complained of receiving the identical pre-recorded voice message as the one received by Plaintiff Goff.

36. The company name stated in the pre-recorded message was "PolicyScout."

37. On July 13, 2021, at 9:32 AM, Plaintiff Goff received a 2nd unsolicited pre-recorded voicemail on her cell phone from phone number 217-292-2579 from the Defendant PolicyScout soliciting life insurance quotes.

38. The second pre-recorded voicemail was identical to the previous voicemail Plaintiff received on June 22, 2021, mentioned in Paragraph No. 33 and 34 of this complaint.

39. On July 19, 2021, at 12:53 PM, Plaintiff Goff received a 3rd unsolicited pre-recorded voicemail on her cell phone from phone number 352-441-3958 from the Defendant PolicyScout soliciting life insurance quotes.

40. The voicemail was pre-recorded in a female voice, very similar to the two pre-recorded messages the Plaintiff received earlier, and said:

11

"Hi there, I'm just following up on your life insurance quote from PolicyScout. I have your file open and it looks like you inquired a few days ago so give me a call back as soon as you can at 1-888-901-2788. I want to set up a quick call to make sure that you get the best rates as I'm looking at your file there's a lot of different options we can go over and we can make it easy to understand what the best option is for you. So yeah anyways give me a call back as soon as you can since I have your file open for life insurance quotes and again I'm calling from PolicyScout and our number is 1-888-901-2788. I look forward to hearing from you."

41. On July 19, 2021, at 1:40 PM, Plaintiff Goff received the following text message on her cell phone from Defendant PolicyScout:



42. Plaintiff did not provide her consent to Defendant PolicyScout to place pre-recorded calls or send text messages to her cell phone number.

43. The unauthorized solicitation telephone call that Plaintiff received from Defendants, as alleged herein, has harmed Plaintiff Goff in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone in addition to the wear and

12

tear on the phone's hardware (including the phone's battery), keeping her phone occupied, and the consumption of memory on the phone.

44. Seeking redress for these injuries, Plaintiff Goff, on behalf of herself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

45. Plaintiff Goff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) any of the Defendants (or an agent on behalf of any of the Defendants) called on their cellular telephone number (2) using a pre-recorded voice message, and (3) for whom such Defendant claims it obtained consent to call the person or the person's number in the same manner as such Defendant claims it supposedly obtained consent to call Plaintiff or Plaintiff's number.
>
> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) any of the Defendants (or an agent acting on behalf of any of the Defendants) texted or called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendants called Plaintiff.

46. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Goff anticipates the need to amend the Class definitions following appropriate discovery.

13

47. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of both Classes.

48. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

   (a)   whether the Defendant placed pre-recorded voice message calls to Plaintiff Goff and members of the Pre-recorded No Consent Class;

   (b)   whether the calls were made without first obtaining prior express written consent of Plaintiff Goff and members of the Pre-recorded No Consent Class;

   (c)   whether the Defendant placed multiple calls, including text messages, to Plaintiff Goff and members of the Do Not Call Registry Class within a 12 month period;

   (d)   whether both Defendant Cege Media and Defendant PolicyScout are together responsible for placing the pre-recorded calls to Plaintiff Goff and members of the Pre-recorded No Consent Class and Do Not Call Registry Class;

   (e)   whether Defendants' conduct constitutes a violation of the TCPA; and

   (f)   whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

49. **Adequate Representation**: Plaintiff Goff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in class actions. Plaintiff Goff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff Goff and her counsel are committed to vigorously

14

prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Goff nor her counsel have any interest adverse to the Class.

50. **Appropriateness**: This class action is also appropriate for certification because Defendants acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Goff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Goff and the Pre-recorded No Consent Class)**

51. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

52. Defendants PolicyScout and Cege Media transmitted unwanted solicitation telephone calls to Plaintiff Goff and the other members of the Pre-recorded No Consent Class using pre-recorded voice messages.

53. These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff Goff and the other members of the Pre-recorded No Consent Class.

15

54. Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, Plaintiff Goff and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**SECOND CLAIM FOR RELIEF**
Telephone Consumer Protection Act
(Violation of 47 U.S.C. § 227)
(On Behalf of Plaintiff Goff and the Do Not Call Registry Class)

55. Plaintiff repeats and realleges paragraphs 1 through 50 of this Complaint and incorporates them by reference herein.

56. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

57. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

58. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as the Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

59. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call

16

Registry Class received more than one telephone call or text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

60. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Goff individually and on behalf of the Class, prays for the following relief:

a. An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Goff as the representative of the Class; and appointing her attorneys as Class Counsel;

b. An award of actual and/or statutory damages and costs;

c. An award of attorney's fees;

d. An order declaring that Defendants' actions, as set out above, violate the TCPA;

e. An injunction requiring the Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

f. Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Goff requests a jury trial.

**ROSE GOFF**, individually and on behalf of all others similarly situated,

DATED this 28th day of July, 2021.

17

By: /s/ Stefan Coleman
Stefan Coleman (FL Bar no. 30188)
law@stefancoleman.com
Law Offices of Stefan Coleman, P.A.
201 S. Biscayne Blvd,
28th Floor, Miami, FL 33131
Telephone: (877) 333-9427

Avi R. Kaufman (FL Bar no. 84382)
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*